**STATE of Texas, Appellant,**

v.

**CITY OF DALLAS et al., Appellees.**

**STATE of Texas, Appellant,**

v.

**CITY OF AUSTIN et al., Appellees.**

Nos. 10656 and 10657.

Court of Civil Appeals of Texas.

Austin.

Dec. 17, 1958.

Rehearing Denied Jan. 7, 1959.

Will Wilson, Atty. Gen., H. Grady Chandler, John B. Webster, Asst. Attys. Gen., for appellant.

H. P. Kucera, City Atty., Ed Gossett, Whitney R. Harris, Warren J. Collins, Howard Norris, W. Autry Norton, Jos. Irion Worsham, Dallas, Doren R. Eskew, City Atty., Robert J. Potts, Jr., Asst. City Atty., Austin, James Wetherbee, Willis L. Lea, Jr., Dallas, Looney, Clark, Mathews, Thomas & Harris, Frank Denius, Austin, for appellee.

ARCHER, Chief Justice.

These cases involving the same or similar questions, have been, on motion, consolidated.

Appellant the State of Texas filed two suits, No. 10,656 against the City of Dallas, Southwestern Bell Telephone Company, Dallas Power and Light Company and the Lone Star Gas Company, and No. 10,657 against the City of Austin, Southwestern Bell Telephone Company and the Southern Union Gas Company, seeking in each suit a declaratory judgment as to the rights and duties of the parties under Section 4-A of Chapter 300, page 724, Acts of the 55th Legislature, Regular Session, 1957, Article 6674w–4, Vernon's Ann.Civ.St., and particularly the duty, if any, of the State to reimburse the defendants for their respective costs incurred in the removal, relocation and adjustment of their utility facilities occupying the streets, alleys, roads and public ways within the corporate limits of the City of Dallas and/or the City of Austin where such relocation or adjustment is necessitated by the improvement of an Interstate Highway.

These suits necessarily involve the constitutionality of Section 4-A of the Act.

The State contends that such section is unconstitutional, and the defendants contend that it is valid.

The Act, Chapter 300, p. 724, was passed to facilitate the construction, maintenance and operation of State highways. It contains a severability clause in Section 6. Section 4-A provides for reimbursement by the State to defendants of the cost of relocation of utility facilities necessitated by the improvement of an Interstate Highway, provided that such relocation is eligible for Federal participation.

As stated the only question presented for the Trial Court's determination was strictly the legal issue as to the constitutionality of Article 6674w-4 and the effect of such on the bill as a whole. Motions for summary judgment were filed by appellant and appellees supported by affidavits and each movant conceded that there were no genuine issues of fact in these cases.

The Trial Court granted the motions of appellees for summary judgment and denied appellant's motions.

The appeal is before this Court on nine points and are to the effect that the court erred in denying plaintiff's motion for summary judgment, in sustaining defendants' motion for summary judgment, in holding that Section 4-A is not invalid as a donation of public monies as prohibited by Section 51 of Article III of the State Constitution, Vernon's Ann.St., and not invalid as a gift or loan of the credit of the State in violation of Section 50, Article III of the Constitution, in holding Section 4-A is not invalid as a release of the obligations of corporations or individuals in violation of Section 55 of Article III of the Constitution, in holding that Section 4-A is not invalid as an appropriation for private or individual purposes as prohibited by Section 6 of Article XVI of the Constitution, in holding that Section 4-A does not delegate to the United States, its Congress, and agencies certain legislative authority which may properly be exercised only by the Legislature of the State of Texas, in holding that Section 4-A does not provide for disbursements to be made from the State Highway Fund in a manner and for a purpose prohibited by Section 7-a of Article VIII of the Constitution, and in not confining the application of its judgment to the utility facilities situated within and upon the public streets, alleys, roads and other public ways within the corporate limits of the cities of Dallas and Austin and within the rights of way of the Interstate Highways, which were the only facilities placed in issue by the pleadings.

It is agreed that the defendants have installed their utility facilities within the rights of way of city streets, alleys and other public ways within the corporate limits of the City of Dallas and of the City of Austin and some of which installations are also within the rights of way of designated highways; that appellant has determined to be necessary the improvements and construction of such Interstate Highways, and such improvements and construction will necessitate the adjustment and relocation of such facilities; that due demand has been made on defendants (appellees) to adjust and relocate said facilities and they have refused to do so as plaintiff (appellant) refuses to enter into agreements to reimburse them for their costs and expenses so incurred.

Points one through six are grouped for argument, for the purpose of providing a presentation to this Court of the unconstitutionality of Article 6674w-4 in its application to the cities, and separately from the argument of its application to the utility companies.

Appellant asserts that the utility companies have a duty at their sole expense to relocate or remove their facilities which are presently situated in the rights of way in such a manner as to conform to the construction and improvement of all public streets and highways as they traverse the area within the corporate limits of the City of Austin, or City of Dallas as the case may be. The grant of authority by virtue of which defendant companies have located

their facilities within the public rights of way is not absolute; to the contrary, it is qualified and conditional and are subordinate to the interests of the traveling public, and appellant cites City of San Antonio v. Bexar Metropolitan Water District, Tex. Civ.App., 309 S.W.2d 491, er. ref.

Further contention is made that one of the conditions of the grant of authority is that the companies will relocate and remove such facilities when they interfere with the use of the rights of way by the public, as determined by the State or by the political subdivisions or agency thereof, and cite as the general rule 18 Am.Jur. 792, Eminent Domain, Section 161; Southern Bell Tel. & Tel. Co. v. State ex rel. Ervin, Fla.Sup., 1954, 75 So.2d 796; Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky.Ct.App., 1954, 266 S.W.2d 308, and a number of other cases, most if not all are cited in the above cases.

Articles 1416, 1436a and 1436b, V.A.C.S., in authorizing the laying of utility lines in public roads and highways, outside of the limits of incorporated cities, make reservation for future changes in the public use of such roads and highways.

The ordinances of the two cities granting a franchise to the Telephone Company and the Gas Company provide for control by the City and for relocation of their facilities. Appellant says that it does not rely merely on the City ordinances for the creation of such duty of relocation of such facilities, but rather on the authorities cited in the cases above mentioned, and that a grant without the condition to relocate such facilities would be a void attempt to impair the cities' performance of governmental functions. Citing City of Brenham v. Brenham Water Company, 67 Tex. 542, 4 S.W. 143; Bowers v. City of Taylor, Comm.App.1928, 16 S.W.2d 520, 521..

We quote from Article 6674w–4, V.A. C.S.:

"Whenever the relocation of any utility facilities is necessitated by the improvement of any highway in this State which has been or may hereafter be established by appropriate authority according to law as a part of the National System of Interstate and Defense Highways, including extensions thereof within urban areas, such relocation shall be made by the utility at the cost and expense of the State of Texas provided that such relocation is eligible for Federal participation. Reimbursement of the cost of relocation of such facilities shall be made from the State Highway Fund to the utility owning such facilities, anything contained in any other provision of law or in any permit, or agreement or franchise issued or entered into by any department, commission or political subdivision of this State to the contrary notwithstanding. The term 'utility' includes publicly, privately, and cooperatively owned utilities engaged in furnishing telephone, telegraph, communications, electric, gas, heating, water, railroad, storm sewer, sanitary sewer or pipelines service. The term 'cost of relocation' includes the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility, and otherwise as may be fixed by regulations for Federal cost participation. It is further provided that by agreement with the affected utility the State Highway Department may relocate such utility facility in accordance with the provisions hereof."

Appellant contends:

"Article III, Section 51: 'The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; * * *'

"Article III, Section 50: 'The Legislature shall have no power to give

or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.'

"Article III, Section 55: 'The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years.'

"Article XVI, Section 6: 'No appropriation for private or individual purposes shall be made * * *.'"

Appellant cites State of Tennessee ex rel. v. Southern Bell Tel. and Tel. Co., Tenn., 319 S.W.2d 90 (On October 3, 1958 the Court granted petitions for rehearing and set the case down for reargument on ——); Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky.1954, 266 S.W.2d 308.

Appellant says that "the enactment of Article 6674w–4 was obviously intended to conform the state law to the conditions set forth in Section 111(a) of the Federal-Aid Highway Act of 1956 (23 U.S.C.A., Section 162[1]), which, at the time of its original enactment, read as follows:

" '(a) Subject to the conditions contained in this section, whenever a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within

urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project: Provided, That Federal funds shall not be apportioned to the States under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State.'

"It was contemplated that Article 6674w–4 would be a device by which the Federal Government would pay 90% of the cost of utility relocation and that the people of this State would pay for only the remaining 10%. This premise is based: first, on the provision of the state law that the State would pay for cost of relocation only if it were eligible for Federal participation; and second, the provision of the Federal-Aid Highway Act of 1956 that Federal aid funds may be used to reimburse the State for the cost of relocation in the same proportion as Federal funds are expended on a given project. * * * The intention of Congress in providing for reimbursement to the States is clarified by the change and addition to the Federal Act (23 U.S.C.A. [§] 162) by its amendment in the Federal-Aid Highway Act of 1958 (Public Law 85–381, 72 Stat. 89) and which provide as follows:

" 'Provided, That Federal Funds shall not be reimbursed to any State under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State; Provided further, That such reimbursement shall be made only after evidence satisfactory to the Secretary shall have been presented to him substantiating the fact that the State has paid such cost from its own funds with respect to Federal-aid highway projects for which Federal funds are obligated sub-

1. Now 23 U.S.C.A. § 123.

sequent to the date of enactment of the Federal-Aid Highway Act of 1958 for work, including relocation of utility facilities.'

"The words 'reimbursed to any State' are substituted for the original words 'apportioned to the States' in the first proviso, and the second proviso was added in its entirety by this amendment.

"This, the availability of Federal funds is conditioned upon (1) the legal liability of the State to pay the cost of relocation and (2) the prior actual expenditure of State funds (rather than Federal funds) for this purpose.

"The primary issue in this suit concerns the expenditure of public monies from the State Treasury, and the possibility of reimbursement of a portion thereof by the Federal Government is of no materiality whatsoever in the determination of the constitutionality of the expenditure of such State funds."

Appellant, with reference to the duty of the cities to relocate their lines, etc. says that the Cities of Dallas and Austin have installed within the rights of way of the Interstate Highway water lines, sewer lines, and their electrical distribution systems, which is admitted.

Appellant concedes that the use of State funds to reimburse a city for the cost of relocating sanitary sewer facilities is not prohibited by Section 51, Article III of the Constitution as it involves a governmental rather than a proprietary function of a city, but contends that such relocation is not part of the construction of a high-. way and that the use of highway funds. for this purpose is prohibited by Article VIII, Section 7-a of the Constitution.

■ The functions of a city are of two general classes. Those required of it by law are governmental in nature, and in performing them the city acts as an agency of the State government and also in per-

forming other functions for its own benefit or the benefit of its inhabitants in a corporate or proprietary capacity. City of River Oaks v. Moore, Tex.Civ.App., 272 S.W.2d 389, er. ref., n. r. e.

■ The dominion over the public streets heretofore delegated to the City of Austin and City of Dallas by the Legislature have been in some degree abridged by the enactment of Articles 6674w–4 through 6674w–5, V.A.C.S., which in brief, provide that the Highway Commission is empowered to lay out a designated highway and provide that any order issued by the Commission shall be superior to ordinances of cities.

The appellant contends that the city is deprived of control of such streets as may become a part of the highway system, and that city-owned utility facilities situated in such streets stand on equal footing with facilities as are owned by private corporations and cite a number of cases, the latest in point of time is City of Mission v. Popplewell, Tex., 294 S.W.2d 712.

We believe that the court was justified in granting defendants', appellees' herein, motions for summary judgment and in denying appellant's motions.

■ We believe that House Bill 179, etc., Article 6674w–4 is valid and constitutional and does not donate public monies to corporations nor is it a gift or loan of the credit of the State, or a release of the obligations of corporations or individuals, or an appropriation for private or individual purposes, in violation of sections 50, 51 and 55 of Article III of the Constitution of Texas, or Section 6 of Article XVI.

These cases involve the power of the Legislature to enact laws for future application and effect under the State's police power.

■ There can be no question but that the Legislature can lawfully permit cities and private corporations to place facilities

in streets and highways to provide essential utility service for the public and may impose reasonable conditions. The State may reserve the power to relocate utility facilities itself, or it may impose that duty upon the users of the streets, with or without reimbursement of all or part of the nonbetterment costs. We believe that the Legislature is not precluded from making changes in the uses or conditions for future application after the original determination of the conditions governing use of the streets, etc.

■ Police power in its broadest sense can be directed against persons for the prevention and suppression of crimes, and preservation of order and in the interest of the general welfare.

■ There are limitations under the Constitution, and when police power is directed against persons in relation to property, its ownership and uses, it has been viewed by the courts more closely than the exercise of that power in prevention and suppression of crimes, and the execution of criminal laws.

■ The police power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably, and particular individuals may not be singled out to bear the cost of advancing the public convenience. City of Austin v. Austin Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528; Nashville C. & St. L. Ry. Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949; Houston & T. C. R. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850; Fort Worth Improvement Dist. No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994.

The Legislature has from time to time exercised its right to repeal, change, modify or abolish the common law as it was adopted in Texas.

Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, sustaining the constitutionality of the workmen's compensation law, citing cases; City of Corsicana v. Wren, Tex., 317 S.W.2d 516 is a case reviewing the Municipal Airport Act. Art. 46d–15, V.A.C.S.

In enacting Article 6674w–4 the Legislature applied to the construction of Interstate Highways the same policy it had previously applied to a number of other statutes providing for reimbursement to utility companies of the cost of relocating facilities in public improvement. We will only list a few.

San Patricio Municipal Water District, Art. 8280–145, Sec. 5; Dallas County Water Supply and Control District, Art. 8280–148, Sec. 7; Travis-Williamson County Water Control and Improvement Dist. No. 1, Art. 8280–178, Sec. 6.

■ Then too, the Legislature is never presumed to have done a vain thing in the enactment of a statute. Imperial Production Corp. v. City of Sweetwater, 5 Cir., 210 F.2d 917.

■ There is no question but what the Legislature has the responsibility and is clothed with the authority to formulate the public policy of the State. McCain v. Yost, 155 Tex. 174, 284 S.W.2d 898.

In its endeavor in the determination of the public policy the Legislature enacted the statute here in question and included this provision:

"Whenever the relocation of any utility facilities is necessitated by the improvement of any highway in this State which has been or may hereafter be established by appropriate authority according to law as a part of the National System of Interstate and Defense Highways, including extensions thereof within urban area, such relocation shall be made by the utility at the cost and expense of the State of Texas provided that such relocation is eligible for Federal participation. * * *"

It is apparent that the Legislature has determined that the cost of removal, relocation and adjustment of utilities is a part of the construction of these highways.

Then too, a provision provides:

" * * * Reimbursement of the cost of relocation of such facilities shall be made from the State Highway Fund to the utility owning such facilities, anything contained in any other provision of law or in any permit or agreement or franchise issued or entered into by any department, commission or political subdivision of this State to the contrary notwithstanding. * * *"

We believe that the statute as enacted with its several provisions are within the province of the Legislature. Oswego & Syracuse R. Co. v. State, 226 N.Y. 351, 124 N.E. 8; City of Beaumont v. Priddie, Tex.Civ.App., 65 S.W.2d 434, appeal dismissed for mootness, Texas & N. O. R. Co. v. Priddie, Tex.Com.App., 95 S.W.2d 1290.

■ Cities have control over their streets. City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326; City of San Antonio v. Bexar Metropolitan Water Dist., Tex.Civ.App., 309 S.W.2d 491, er. ref.

When the Highway Department was created in 1917 it took advantage of the Federal-Aid Road Act and was given authority to exercise certain control over certain roads, and this Act was sustained. Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915.

Subsequently the Legislature directed that the indebtedness incurred by municipal corporations be assumed by the Department. Jefferson County v. Board of County & District Road Indebtedness, 143 Tex. 99, 182 S.W.2d 908.

Cities and utility companies have large investments in water mains, sewer and gas lines, telephone and other distribution facilities in the streets, public ways, etc., to be displaced by the Interstate and Defense Highway System under construction in Texas. These property rights devoted to public use which are protected by constitutional guarantees are valuable property rights. Corpus Christi Gas Co. v. City of Corpus Christi, Tex.Civ.App., 283 S.W. 281, er ref.

Article 1416 grants authority to Telephone and Telegraph Companies to place their utility facilities in streets, roads, highways and waters throughout Texas in such manner as not to incommode the public in the use of such roads, streets and waters.

Articles 1436a and 1436b relate to power and gas companies and provide that any such corporation may be required at its own expense to relocate its lines on a State highway or county road outside the limits of an incorporated city or town so as to permit the widening of the right of way, etc.

With the enactment of House Bill 179 the Highway Department was given authority to enter a city for highway purposes without the agreement of city authorities, and extend such Interstate and Defense Highways through incorporated areas.

The statute we are concerned with does not extend credit, nor is any obligation involved, or release, and no public funds are given away.

Reimbursement under these statutes is restricted to the nonbetterment portion of the cost of utility relocations imposed by the Highway Commission. The city or utility companies gain nothing.

■ The constitutional provisions in issue in these cases are similar to such provisions of other states and were designed to prevent the giving away of public funds and not to deny the Legislature the use of State funds for governmental purposes. Highway Commission of Texas

v. Vaughn, Tex.Civ.App., 288 S.W. 875, er. ref.; Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738.

■ Clearly the construction of State highways is a governmental or public purpose and in the public interest.

■ It is because of the public intent in receiving utility service that the right of utility companies to use the streets and roads is recognized. City of Brownwood v. Brown Tel. & Tel. Co., 106 Tex. 114, 157 S.W. 1163; State ex inf. McKittrick v. Southwestern Bell Tel. Co., 338 Mo. 617, 92 S.W.2d 612; City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818, sustained an outright gift of funds by the State to the City for construction of seawalls, as being in the interest of the State at large.

In Austin National Bank of Austin v. Sheppard, 123 Tex. 272, 71 S.W.2d 242, a special bill which appropriated funds to reimburse the claimant the amount of the franchise tax which had been collected without lawful authority was upheld.

In Minneapolis Gas Company v. Zimmerman, Minn., 91 N.W.2d 642, the court held that an expenditure of funds to effect the relocation of utility facilities was properly a governmental function exercised for a public purpose of primary benefit to the entire community and such relocation is made necessary in order to expedite public travel and further because there would be an economical loss if the State failed to take advantage of Federal aid.

Similar holdings were made by the Supreme Judicial Court, Opinion of the Justices, 152 Me. 449, 451, 132 A.2d 440. Delaware River Port Authority v. Pennsylvania Public Utility Commission, 180 Pa.Super. 315, 119 A.2d 855.

■ We do not believe that House Bill 179, Article 6674w–4 delegates to the United States, its Congress or agencies certain legislative authority which may properly be exercised only by the Legislature of the State of Texas.

"The Legislature may not delegate its power to make a law, it may enact a law to become operative upon a certain contingency or future event; * * *" Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070, 1080.

Minneapolis Gas Company v. Zimmerman, supra; Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053; Opinion of the Justices, 126 Me. 614, 137 A. 50.

■ House Bill 179 does not provide for disbursements to be made from the State Highway Fund in a manner or for a purpose prohibited by Section 7-a of Article VIII of the Constitution.

As a part of Chapter 300 the Legislature declared the purpose for which it was enacted, as follows:

"The Legislature finds, determines and declares that the purpose of this act is to delegate certain additional authority to the State Highway Commission to promote the Public Safety, to facilitate the movement of traffic, to preserve the financial investment of the public in its highways and to promote the National Defense."

As we have stated we believe the statute is constitutional. Texas Turnpike Authority v. Shepperd, 154 Tex. 357, 279 S.W. 2d 302; State ex rel. Wabash R. Co. v. Public Service Commission, 340 Mo. 225, 100 S.W.2d 522, 109 A.L.R. 754.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, J., not sitting.