

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

July 30, 1973

Honorable George W. McNiel
State Auditor
Sam Houston State Office Building
P. O. Box 12067
Austin, Texas 78711

Opinion No. H- 74

Re:   Legality of a revolving
      fund established by the
      State Commission for
      the Blind from funds
      received by gift and
      from which employees
      of the agency may re-
      ceive advances against
      their accrued claims
      for salary or travel

Dear Mr. McNiel:                           reimbursement.

    You have asked about the authority of the State Commission for
the Blind to engage in certain practices regarding employee expenses.
Your letter states:

> " . . . State Commission for the Blind . . .
> current fiscal practices include the payment
> of advances against employees' estimated
> claims for salary or travel reimbursement.
> The source . . . has been client training ex-
> pense funds. . . locally held and derived from
> donations for rehabilitation activities. "

    You also ask if our answer would be different if the advances were
made after the actual performance of the travel or employment but be-
fore payment by the State Comptroller.

    Furnished with your request was a memorandum reflecting the
views of the Commission. By it we are advised that:

   (1) The agency "has a responsibility to serve many persons who cannot readily come to the office of this agency . . . and it is incumbent upon this agency's staff . . . to deliver the services of the agency to clients who cannot . . . readily leave their homes."

   (2) To service eligible individuals throughout the state "entails a continuing extension by this agency's field staff of personal funds or personal credit required for the defraying of . . . reasonable and necessary travel expenses . . . ." and

   (3) The agency deals with human needs; time is frequently of the essence.

We are further advised by the Commission:

   " . . . [T]ravel vouchers are sometimes delayed weeks or months in being processed at the State Comptroller's office . . . . [F]ew of our employees . . . can continue to finance their official travel with personal funds. . . ."

   In our opinion, sufficient authority does exist for the Commission for the Blind to advance money from unrestricted funds to pay authorized agency expenses incurred (or to be incurred) by employees in the discharge of agency business. We find, however, no authority for pre-payments of salary. Because special provisions apply to the Commission which do not apply to all State agencies, it is unnecessary to consider the authority that would exist in their absence.

   The general statutory authority of the Texas Commission for the Blind is found in Articles 3207a, 3207b, and 3207c, V.T.C.S. In § 2 of Article 3207a, setting out powers and duties of the Commission, it is provided:

"(f)   The Commission shall take such measures
as it may deem advisable to prevent blind-
ness and to conserve eyesight.

. . . .

"(i)   The Commission may receive and expend
gifts, bequests, and devises from indivi-
duals, associations and corporations, in
accordance with the provisions of this Act."

Article 3207b, in part, reads (emphasis added):

". . . [T]he Commission for the Blind shall an-
nually appoint an executive director and such other
employees as may be necessary and authorized by
legislation applicable to the Commission for the
Blind.   Expenses of members of the Board and of
employees shall be paid in the most efficient and
practical manner authorized by law for the payment
of such expenses.   All accounts shall be paid in ac-
cordance with laws applicable to the Commission or
in accordance with laws applicable to State agencies
generally."

Article 3207c, dealing with the Vocational Rehabilitation Program
of the Commission, provides in part (emphasis added):

"Sec. 3. . . . In carrying out his duties under this
Act the Director:

"(a) shall make regulations governing person-
nel standards, the protection of records and
confidential information, . . . and such other
regulations as he finds necessary to carry out
the purposes of this Act;

. . . .

"(e) shall make certification for disbursements, in accordance with regulations, of funds available for vocational rehabilitation purposes;

"(f) shall, with the approval of the Commission, take such other action as he deems necessary or appropriate to carry out the purposes of the Act;

. . . .

"Sec. 7. The Director is hereby authorized and empowered, with the approval of the Commission, to accept and use gifts made unconditionally by will or otherwise for carrying out the purposes of this Act. . . ."

The provisions evidence an intent that the work of the Commission not be impeded by unnecessary red tape. Subsection (i) of § 2 of Article 3207a, V. T. C. S., constitutes general legislation "earmarking" all gifts, bequests and devises from individuals to the Commission for its use, inter alia, "as it may deem advisable to prevent blindness and conserve eyesight," pursuant to subsection (f) thereof. Section 7 of Article 3207c, V. T. C. S., is additional general legislation to the same effect. These provisions are consistent with Article 16, § 6 of the Constitution which (after generally providing that no appropriation for private or individual purposes shall be made), states (emphasis added):

"(b) State agencies charged with the responsibility of providing services to those who are blind . . . may accept money from private . . . sources, designated by the private . . . source as money to be used in and establishing and equipping facilities for assisting those who are blind . . . in becoming gainfully employed, in rehabilitating and restoring the handicapped, and in providing other services

> determined by the state agency to be essential
> for the better care and treatment of the handi-
> capped.  Money accepted under this subsection
> is state money. . . .
>
> "The state agencies may deposit money
> accepted under this subsection either in the state
> treasury or in other secure depositories.  The
> money may not be expended for any purpose other
> than the purpose for which it was given.  Notwith-
> standing any other provision of this Constitution,
> the state agencies may expend money accepted
> under this subsection without the necessity of an
> appropriation, unless the Legislature, by law,
> requires that the money be expended only on ap-
> propriation.  The Legislature may prohibit state
> agencies from accepting money under this sub-
> section or may regulate the amount of money ac-
> cepted, the way the acceptance and expenditure
> of the money is administered, and the purposes
> for which the state agencies may expend the money
> . . . ."

The general legislation on the subject omits any requirement that such moneys be expended by the Commission only upon appropriation. We think the Legislature has impliedly sanctioned expenditures from such gifts without appropriation, and that further general legislation would be necessary to change that policy.  See Attorney General Opinions M-1199 (1972), M-91 (1967).  Accordingly, provisions and riders contained in the General Appropriations Act cannot control here, whatever might be the case of gift receiving agencies not within the scope of Article 16, § 6b of the Constitution.  Compare Attorney General Opinion V-412 (1947). The Legislature has been given only the power to regulate (not change) the purposes for which such gifts may be expended, i. e., decide which, if any, of the donor's designated purposes may be carried into effect, and it has been specified by general legislation that those gifts consistent with the terms of Articles 3207a and 3207c, V. T. C. S., may be utilized and expended by the Commission.  Donations become State money but are a supplemental source of funds to the Commission.

We conclude that donations received by the Commission, unless limited by the private grant itself, may currently be spent without appropriation for any legitimate purpose (consistent with its statutory mandate) deemed by the agency to be necessary or essential for the better care and treatment of those whom it serves. The Commission had determined that adequate service is endangered by requiring its employees to finance travel expenses and other expenses incurred on behalf of the Commission and the State. Unless a constitutional bar applies, we cannot say that relief of such a condition is not a legitimate purpose for which such funds may be expended, particularly since Article 3207b expressly authorizes the payment of such expenses in the most efficient and practical manner authorized by law.

Article 3, Sections 44, 50, and 51 of the Constitution bar payment of post-performance extra compensation or claims not supported by pre-existing law, and prohibit the giving or lending of the credit of the State in aid of persons, the pledge of the credit of the State for the present or prospective liability of persons, or the grant of public money to persons. We do not see any violation of such constitutional provisions so long as the expenses advanced by the agency are limited to those authorized under Article 6823a or other applicable laws. Authorized expenses are not "salary" or "emoluments," or "extra compensation," and disbursements of funds to pay them are not gifts or grants for private purposes. Such disbursements are made for a public purpose and expenditures from funds on hand for public purposes are not prohibited. State v. City of Austin, 331 S.W. 2d 737 (Tex. 1960), affirming State v. City of Dallas, 319 S.W. 2d 767 (Tex. Civ. App. 1959); Barrington v. Cokinos, 338 S.W. 2d 133 (Tex. 1960). Articles 3207a, 3207b, and 3207c, V.T.C.S., constitute "pre-existing law."

Authorized expenses which are to be classified as paid for a public purpose are those of such a nature that the function of the agency cannot be discharged without incurring them. See Terrell v. King, 14 S.W. 2d 786 (Tex. 1929); Anno: 5 ALR 2d 1182; 63 Am. Jur. 2d, Public Officers and Employees, § 387; 67 C.J.S., Officers, § 91. Such expenses are part of the operating costs of the agency and are neither perquisites nor emoluments. Though they may sustain an employee, they are not expended for the benefit of the employee, but for the agency which cannot function

unless employees are so sustained. They are no part of the employee's "compensation for services rendered" and are also to be distinguished from personal expenses for private and individual purposes. See Terrell v. Middleton, 187 S. W. 367 (Tex. Civ. App., San Antonio, 1916, writ refused).

Authorized travel expenses incurred by an agency employee are liabilities and expenses of the agency, not of the employee, and if the agency pays them in the first instance from unrestricted funds, there is no reason that we can see why the agency would not be entitled in the same manner as the employee, to later reimbursement therefor from funds specifically appropriated to pay travel expenses. Cf. Attorney General Opinions S-103 (1953); WW-1207 (1961). A procedure already exists whereby agencies may have public transportation costs billed directly to them and paid by the Comptroller upon a purchase voucher from the agency. See §12b, Article 5, of the General Appropriations Acts for both 1972 and 1973-74.

Reimbursement of authorized travel expenses incurred by State agency members and employees from specifically appropriated funds is governed by Article 6823a, V. T. C. S., the Travel Regulations Acts of 1959. That statute does not prohibit the expenditure of non-appropriated funds for such purposes. Attorney General Opinions WW-1053 (1961); M-1175 (1972). Section 4 of that Act does specify (emphasis added):

> "Sec. 4 Unless otherwise provided by law, officers and employees traveling to the performance of their official duties shall not accept any sums of money for wages or expenses, from any corporation, firm, or person who may be or is being audited, examined, inspected, or investigated, and must receive their traveling expenses from the amounts appropriated in the Appropriation Acts. The Comptroller is hereby prohibited from paying the salary of any employee of the state who violates these provisions."

But the provision has no application to activities not involving audits, examination, inspections or investigations, and we interpret it as intended to guard against conflicts of interest - not against the pre-payment of such expenses by the agency from unrestricted funds rather than by the individual employee from his personal assets.

State employees are not required by law, as a condition of their employment, to privately finance the authorized agency expenses they incur. But if they do, they are given by law a means to recoup. The "per diem" and "mileage" provisions of Article 6823a, V. T. C.S., do not argue otherwise; those are roughly calculated (in conjunction with Appropriation Act provisions) to reimburse authorized actual expenses without the need for minute and wasteful accounting records by the State. Section 3a of that statute specifically states that per diem advances "shall be legally construed as additional compensation for official travel purposes only. "

Section 11a Article 5 of both the 1972 and the 1973-1974 General Appropriation Acts reads (emphasis added):

> "GENERAL TRAVEL PROVISIONS. a. The amounts specifically appropriated in this Act to each agency of the State for the payment of travel expenses are intended to be and shall be the maximum amounts to be expended by employees and officials of the respective agencies. None of the moneys appropriated by this Act for travel expenses may be expended unless the official travel and the reimbursement claims therefor are in compliance with the following conditions, limitations, and procedures. . . ."

In our view, this provision has no application to expenditures authorized by other laws, or to funds which may be spent without appropriation. But it does govern reimbursement from appropriated funds.

Article 6823a, § 6f, provides that an officer or employee who receives an overpayment for travel expenses is to reimburse the state for such over-

payment. We think the same obligation would rest with an employee or officer who is advanced expenses by the Commission which later prove to be unauthorized.

Section 7 of Article 6823a reads:

> "Sec. 6. Double travel expenses payments to state officials or employees are prohibited. When an employee engages in travel for which he is to be compensated by a non-state agency, he shall not receive any reimbursement for such travel from authorized amounts in the General Appropriation Acts."

This provision bars "collecting twice" for the same expense; it does not prohibit a state agency from replenishing an unrestricted fund depleted by legitimate travel expense advances with treasury funds appropriated to defray such expenses. See Attorney General Opinions S-103 (1953); WW-1207 (1961).

We understand, however, that the Commission currently treats such advances as "loans" to its employees and requires them as a condition of eligibility for such advancements (and to secure their repayment) to grant to the Commission a power of attorney authorizing the Commission to deposit to the agency's checking account all salary and travel warrants from the Treasury made payable to the employee. The agency also charges the employee the sum of $1.00 for each advance made.

We think the characterization of such advances as "loans" is erroneous. The amounts legitimately advanced are to pay liabilities of the agency, not those of the employee. No advancements should be made in excess of authorized expenditures for contemplated agency expenses. We think it permissible for the agency to arrange that amounts so advanced not be paid again directly to the employee in the form of Treasury travel warrants, but the Commission's claim on employee travel warrants will never exceed the amount of the warrants to be issued so long as only authorized expenses have been advanced.

Salary warrants cannot be handled the same way. When <u>expenses</u> are legitimately advanced, they are to be used for a specific public purpose by the employee as the representative of the agency. The money cannot be lawfully used to satisfy purely personal needs. Such an expense advance is not a loan. A person's salary, however, is his to do with as he wishes. It cannot be <u>advanced</u> to him by the agency because the advance would then constitute a personal loan to him of public funds to be used for private purposes.

If amounts for expended expenses are advanced in excess of the expenses which are later proved to have been actually authorized or necessary, we think the agency can recover the excess from the employees, but we do not think salary warrants can be legitimately held in pledge, in effect, to secure such "loans." The agency cannot lawfully be in the business of lending public money to its employees, and the holding of salary warrants as security for excesses would tend to relax agency diligence in assuring that advances cover only authorized agency expenses.

Nor do we think there is any authority for the agency to charge employees a fee for making advances of authorized expenses. Advances, if legitimately made, are made for the benefit of the agency and only incidentally benefit the employees. The cost of making such advances, if necessary, is an agency operating expense, not properly chargeable to its employees as a "service."

Responding to your inquiry, therefore, it is our opinion that the Texas Commission for the Blind may, pursuant to its agency regulations, lawfully advance to its employees from unrestricted donations on hand authorized agency expenses which the employee will incur on behalf of the agency in the performance of agency business, and may lawfully require the employees to whom such advances have been made to deposit with the agency Treasury travel warrants issued to pay for such expenses. But we are of the opinion that the State Commission for the Blind is not authorized to require such employees to deposit with the agency salary warrants issued to them, or to charge a fee to employees for making such advances. Our answer is the same whether such advances are made before or after the authorized expenses are incurred.

## SUMMARY

The State Commission for the Blind, pursuant to its agency regulations, may lawfully advance to its employees from unrestricted donations on hand, authorized agency expenses which the employee will incur or has incurred on behalf of the agency in the performance of agency business, and may lawfully require the employees to whom such advances are made to deposit with the Agency Treasury travel warrants issued to pay for such expenses. But the State Commission for the Blind is not authorized to require such employees to deposit with the agency salary warrants issued to them, or to charge a fee to employees for making such advances.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee