

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

October 4, 1990

Honorable James L. Anderson, Jr.
County Attorney
Aransas County, Texas
301 N. Live Oak
Rockport, Texas    78382

Ms. Kay Schlueter, Director
State Law Library
Supreme Court Building
P.O. Box 12367
Austin, Texas    78711-2367

Opinion No.    JM-1229

Re:    Whether county or
state may provide goods
to    patron    prior    to
receipt of payment; re-
consideration of Attorney
General    Opinion    MW-461
(1982)    (RQ-1922)

Dear Mr. Anderson and Ms. Schlueter:

Mr. Anderson asks whether Aransas County may sell gas and fuel products at the county airport to individuals, corporations, or the Parks and Wildlife Department on a thirty day account whereby charges during the month are billed at the end of the month.    Ms. Schlueter informs us that the State Law Library receives many requests from patrons for next day delivery or telefacsimile transmission of photocopied materials available in the library.    She asks whether Attorney General Opinion MW-461 (1982) requires the library to receive payment before the copies are sent instead of enclosing a bill with the copies.

This office issued Attorney General Opinion MW-461 in answer to an inquiry by the State Purchasing and General Services Commission about its billing for copies of bid tabulations after they are sent out pursuant to open records requirements.    The commission wished to accumulate charges during each month and send out bills at the end of the month.    The legal question addressed by the opinion was whether the proposed system of billing would violate article III, section 50, of the Texas Constitution, which provides as follows:

> The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or

> corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.

Tex. Const. art. III, § 50 (emphasis added).

The opinion cited Letter Opinion R-2358 (1951), which stated of article III, section 50, that "[o]ur laws contemplate, it seems, that State offices or enterprises, the management of which requires the collection of public funds or charges, should be operated on a cash basis."[1] Attorney General Letter Opinion R-2358 at 4. "To defer the payments of charges for copies of public records by means of a monthly billing of the accumulated charges," Attorney General Opinion MW-461 determined, was "just such an extension of the state's credit which is constitutionally proscribed."[2] Attorney General Opinion MW-461, at 2.

---

1. Letter Opinion R-2358 (1951) is a letter written by an assistant attorney general with the hand-written designation "R-2358" in the upper right-hand corner. The attorney general's name appears in the closing, followed by a signature block for the attorney who wrote the letter. Formal attorney general opinions issued in 1951 had a typed opinion number, a heading describing the subject matter, a summary, and a list of the attorneys who approved the opinion. None of these indicia of a formal attorney general opinion appear in Letter Opinion R-2358. See Attorney General Opinion H-1063 (1977) at 3 (citation form of R-1404).

2. A resolution proposing a constitutional amendment to allow the legislature to authorize state agencies to defer fees for services was introduced in the 71st Legislature. H.J.R. 94, 71st Leg. (1989). The resolution, inspired by the issuance of Attorney General Opinion MW-461, was not passed by the legislature.

The legislature's failure to adopt H.J.R. 94 does not establish that Attorney General Opinion MW-461 was correct, or that a constitutional amendment is necessary to change its holding. See Texas Turnpike Auth. v. Shepperd, 279

(Footnote Continued)

Accordingly, the Purchasing Commission could not institute its proposed method of billing, unless it required a deposit to cover the costs of copying records pursuant to section 11 of article 6525-17a, V.T.C.S.

This office addressed a similar question in Attorney General Opinion JM-533 (1986), which concluded that a county officer would lend the county's credit in violation of article III, section 52, and article XI, section 3, of the constitution if he delivered services to individuals, associations, or corporations for deferred payment.[3] Article III, section 52, prohibits the legislature from authorizing political subdivisions to lend their credit, while article XI, section 3, directly prohibits counties and other municipal corporations from lending credit, and the opinion determined that these provisions required county officers to provide services on a "cash only" basis.

Attorney General Opinions MW-461 and JM-533 overlooked authorities holding that the state or a political subdivision may lend credit to accomplish a public purpose. In his analysis of article III, section 50, of the Texas Constitution, Braden described the "lending of credit" language of this provision as saying that the state may not aid anybody by providing him land, goods, or services on credit.  Braden, The Constitution of the State of Texas:  An Annotated and Comparative Analysis 225 (1977).  He concluded that if the current interpretation of article III, section 51, is correct, "it follows that today Section 50 is applicable only if the credit is for a private purpose." Id.  Section 51 provides that the legislature "shall have no power to make any grant or authorize the making of any grant of public moneys" to any individual, association of individuals, or corporation. The current interpretation of this provision, as given in Braden's analysis thereof, prohibits grants for private purposes, but not those to

_____

(Footnote Continued)
S.W.2d 302, 305 (Tex. 1955); Friedman v. American Surety Co. of New York, 151 S.W.2d 570, 580 (Tex. 1941); see also Attorney General Opinion JM-1102 (1989) at 8.

3.  Attorney General Opinion JM-533 (1986) found an exception to the "lending of credit" provisions where some other constitutional provision, such as article I, section 13, required a county officer to provide services without requiring immediate payment.

accomplish public purposes, if sufficient controls are placed on the transaction to ensure that the public purpose is carried out.  Braden, supra at 232-35 (and authorities cited); see Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960); see also State v. City of Austin, 331 S.W.2d 737 (Tex. 1960); Davis v. City of Lubbock, 326 S.W.2d 699 (Tex. 1959); Attorney General Opinion JM-626 (1987).

In State v. City of Austin, 331 S.W.2d 737 (Tex. 1960), the supreme court addressed a number of constitutional issues pertaining to article 6674w-4, V.T.C.S., which provides for the relocation of utility facilities at state expense whenever the relocation is necessitated "by the improvement of any highway in this State which has been . . . established . . . as a part of the National System of Interstate and Defense Highways . . . provided that such relocation is eligible for Federal participation." The terms of federal reimbursement to the state are set forth in title 23, section 123, of the United States Code. See State v. City of Dallas, 319 S.W.2d 767, 772 (Tex. Civ. App. - Austin 1958), aff'd 331 S.W.2d 737 (Tex. 1960). See generally Attorney General Opinion JM-105 (1983) (cable television as a utility within article 6674w-4, V.T.C.S.).

In addressing the state's argument that payment of the relocation costs would constitute a gift or loan of the credit of the state in violation of article III, section 50, the supreme court opinion in State v. City of Austin stated as follows:

> Article 6674w-4 obviously does not involve a gift or loan of the credit of the state unless it can be said that payment of relocation costs amounts to a grant of public money in violation of Article III, Section 51. The purpose of this section and of Article XVI, Section 6, of the Constitution is to prevent the application of public funds to private purposes.

331 S.W.2d at 742 (emphasis added). The supreme court, like Braden, applies the same "public purpose" test to determine the validity of a transaction under article III, section 50, and article III, section 51, of the constitution.

In Brazoria County v. Perry, 537 S.W.2d 89 (Tex. Civ. App. - Houston [1st Dist.] 1976, no writ), the county sued a former deputy sheriff under a promissory note whereby the deputy agreed to repay county funds spent on training him if

he did not serve for two years after completing training. The central issue was whether there was a lending of credit by the county in violation of article III, section 52, of the constitution. The court found no violation, stating as follows:

> The clear purpose of this constitutional provision is to prevent the gratuitous application of funds to private use. The Constitution does not, however, invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose.

537 S.W.2d at 90-91 (citations omitted); see also Attorney General Opinion H-1010 (1977). Thus, a "loan of credit" does not violate the constitution if it is made to accomplish a public purpose.

Opinions of this office issued since Attorney General Opinion MW-461 have treated extensions of credit as constitutional if they met the "public purpose" test. Attorney General Opinion JM-274 (1984) stated that article III, section 52(a), prohibits the use by a political subdivision of its public funds or credit for private purposes and concluded as follows:

> Any lending of credit must be intended to accomplish an authorized county purpose and must be accompanied by conditions to ensure the use of county credit for a public purpose.

Attorney General Opinion JM-274 at 2-3.

Attorney General Opinion JM-1030 (1989) considered whether the Texas Department of Mental Health and Mental Retardation could make advance payment of start-up costs to private entities that had contracted to provide services to clients of the department. Start-up costs could be used to purchase and renovate space in which to provide services, purchase furniture, and pay other costs associated with the preparation to provide services. Thus, the department would be transferring funds to the contractor well in advance of its provision of services to the department's clients.

The requestor asked whether advance payment of start-up costs to a private entity might contravene the prohibition

against the grant of public credit in section 50 of article III or the prohibition against the grant of public monies in section 51. The opinion took note of several opinions that approved the advance payment of public funds to private parties for the achievement of a public purpose. See Attorney General Opinions MW-423 (1982) (grant to private museum honoring firefighters, subject to condition that museum remain open long enough for public to receive benefit of grant); H-1010 (1977) (payment of medical tuition as partial compensation for promise that student will practice medicine in county); H-74 (1973) (prepayment of state employees' authorized travel expenses); see also State ex rel. Grimes County Taxpayers Ass'n v. Texas Municipal Power Agency, 565 S.W.2d 258 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ dism'd w.o.j.) (test for validity of transactions between governmental entities in which one renders agreed services to the other in exchange for money paid at a different time); V.T.C.S. art. 601b, § 3.24 (state agencies may pay in advance for goods purchased from federal and state agencies where advance payment will expedite delivery); Attorney General Opinion H-1033 (1977) (sale of accounts receivable from patients by county hospital).

The opinion concluded that the department could pay "start-up costs" to private entities, provided that the public receive adequate consideration and the governmental body retained enough control over the expenditure of the funds to assure that the public purpose of providing mental health/mental retardation services was actually met. A requirement that advances be repaid was discussed as a possible, although not necessarily exclusive, method of control. If repayment were required, the transfer would take the form of a loan rather than a grant.

Based on the authorities cited, we conclude that a lending of credit will not violate the constitution if it accomplishes a public purpose and is accompanied by conditions to ensure the use of governmental credit for a public purpose. Accordingly, a state or local entity may provide services to a private person or entity in advance of receiving payment if a public purpose will thereby be accomplished and if it places sufficient controls on the transaction to insure that the public purpose will be carried out. Attorney General Opinions MW-461 and JM-533 are overruled to the extent that they hold the contrary.

The determination that a particular extension of credit meets the constitutional requirements is in the first instance within the sound discretion of the governing body,

subject to judicial review. See, e.g., Dodson v. Marshall, 118 S.W.2d 621 (Tex. App. - Waco 1938, writ dism'd); Attorney General Opinions JM-1030 (1989); JM-551 (1986); MW-423 (1982); H-1260 (1978). Mr. Anderson informs us that Aransas County has installed a new gas dispensing and payment system which would allow a person to buy airplane fuel twenty-four hours a day and use an approved credit card for payment. Several entities, including the Texas Parks and Wildlife Department, wish to be issued a special card for the fuel dispensing facilities and be billed on a monthly basis. You do not indicate what public purpose would be served by this arrangement. The commissioners court should determine in the first instance whether such an extension of credit would meet constitutional requirements.

With respect to the inquiry of the State Law Library, however, its request letter and the remarks of the State Purchasing and General Services Commission noted in Attorney General Opinion MW-461 provide some information as to the public purpose that might be served by providing copies of documents to individuals in advance of payment. The State Law Library "may be used by the members and staff of the supreme court, court of criminal appeals, the office of the attorney general, and other state entities and by citizens of the state." Gov't Code § 91.002(b). The letter from the library states that its patrons request next day delivery or telefacsimile transmission of photocopies because they are in a hurry for the information. When they do not have the time to send the money first, the library is forced to either send the information without charge or not send it at all. See V.T.C.S. art. 6252-17a, § 9 (charges for copies of documents under the Open Records Act); General Appropriations Act, Acts 1989, 71st Leg., ch. 1263, at 5705 (fee schedule for duplication services at State Law Library). Attorney General Opinion MW-461 noted that the State Purchasing and General Services Commission might benefit from reduced administrative costs if it billed for documents on a monthly basis.

The library might be able to operate more efficiently and reduce administrative costs by billing on a delayed basis. In determining whether a public purpose will actually be served by permitting delayed payment, the library can balance its savings in administrative costs and in fees collected that would otherwise be waived against possible losses through default of payment. The library has an effective means of control over such transactions in that it can require a deposit or advance payment by a patron who has defaulted on payment in the past. We conclude that the

library may constitutionally bill patrons for copies of documents sent in advance of payment. The details of such a plan, including the controls necessary to carry out its public purpose, are for the library administrators.

### S U M M A R Y

A lending of credit that accomplishes a public purpose and is accompanied by controls that ensure the use of public credit for a public purpose does not violate article III, sections 50 and 52, or article XI, section 3, of the Texas Constitution. The determination that a particular extension of credit meets the constitutional requirements is in the first instance within the sound discretion of the governing body, subject to judicial review. Attorney General Opinions MW-461 (1982) and JM-533 (1986) are overruled to the extent they hold the contrary.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan Garrison
Assistant Attorney General