**C. E. CARTER et al., Appellants,**

v.

**HAMLIN HOSPITAL DISTRICT et al., Appellees.**

**No. 4932.**

Court of Civil Appeals of Texas, Eastland.

June 24, 1976.

Rehearing Denied July 15, 1976.

Frank Scarborough, Scarborough, Black, Tarpley & Scarborough, Abilene, for appellants.

Jack G. Willingham & John S. Watts, Willingham & Watts, Hamlin, Harry C. Green, Asst. Atty. Gen., Austin, for appellees.

McCLOUD, Chief Justice.

Plaintiffs, C. E. Carter, Leon Kelso, Frank Carter, Henry Ueckert, Darwin Hill, and Carl Jackson, sued the Hamlin Hospital District, its Board of Directors, John Scarborough, John Brown, Jr., Joe Cowan, Bill Harbert, Donald Young, Joe Hudspeth, and John C. Bryant, and the Attorney General of Texas, seeking a declaratory judgment that Chapter 561, Acts of the 63rd Legislature of the State of Texas, Regular Session, 1973, which authorized the creation of the Hamlin Hospital District, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs also sought a permanent injunction enjoining the Hamlin Hospital District from assessing or collecting any taxes on their property. Trial was to a jury. The court granted defendants' motion for judgment notwithstanding the verdict. Plaintiffs have appealed. We affirm.

Plaintiffs contend the Act violates the Equal Protection Clause in two respects:

(1) The Act is unreasonable and arbitrary because plaintiffs were included within the boundaries of the district for the purpose only of acquiring additional revenue and plaintiffs will receive no benefit from the district; and

(2) the plaintiffs were not given an "equal weight vote" in the establishment and operation of the district.

Plaintiffs' property is located south of U. S. Highway 180 in Jones County and they argue that there are seven times the number of qualified voters living in the district north of U. S. Highway 180, than there are qualified voters residing south of U. S. 180. They also contend that they, along with other individuals residing south of U. S. Highway 180, own between thirty-five to forty percent of the total value of the taxable property within the Hamlin Hospital District. The jury found that at the time of the passage of the Act authorizing the

creation of the district (1) the people in the proposed district residing south of U. S. 180 used trade centers other than Hamlin as their principal trade center; (2) the people in the proposed district residing south of U. S. 180 used hospitals and medical services other than the hospitals and medical services in Hamlin; (3) it could reasonably be expected that the people who lived south of U. S. 180 would not use the hospital and medical services of the proposed Hamlin Hospital District; and, (4) the people residing south of U. S. 180 had no need for the creation of the hospital district or the services to be offered.

Article IX, Section 9 of the Texas Constitution authorizes the Legislature to provide for the creation, establishment, maintenance and operation of hospital districts "composed of one or more counties or all or any part of one or more counties. . . ." Pursuant to this authority, the 63rd Legislature enacted the Act in question which has been codified as an amendment to Article 4494q, Vernon's Ann.Civ.St.

The Act's provisions, in pertinent part, may be summarized as follows. Section 1 contains a metes and bounds description of the district. Section 3 provides that the district shall not be created nor any tax authorized, unless and until these matters are approved by a majority of the qualified electors residing within the district. The Act provides for a "one man-one vote" election scheme for all elections in the district, including the election to determine whether the district should be created, all bond elections, tax authorization elections, and elections of the district's board of directors. The Act charges the board of directors with the duty of providing medical facilities and services for the residents of the district, and Section 22 expressly states that in carrying out the purpose of the Act, the district will be performing an essential public function. The Act authorizes the board to levy general ad valorem taxes and to issue bonds, upon approval of a majority of the qualified electors residing within the district.

On December 18, 1973, the qualified electors within the proposed district voted to create the Hamlin Hospital District. On August 24, 1974, the qualified electors voted to authorize the board of directors to issue bonds, and to levy, assess, and collect ad valorem taxes on all taxable property within the district.

Defendants argue the court properly entered judgment notwithstanding the verdict because the determination of the boundaries in the instant case is a "political question" solely within the power, prerogative and discretion of the Legislature and is not justiciable under the Equal Protection Clause of the Fourteenth Amendment. We agree.

The principle that the determination of territorial boundaries is ordinarily a political function, not subject to judicial review, was announced by the United States Supreme Court in the early case of *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). There, the City of Allegheny was consolidated with the City of Pittsburgh pursuant to a state statute which permitted consolidation upon an affirmative vote of a majority of the voters residing in both municipal corporations. A majority of the electors residing in Allegheny voted against consolidation. The court said:

"Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. . . .

The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.

The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation . . . In all these respects the State is supreme, and its legislative body, conforming its

action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason . . . The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

Some of the broad language contained in *Hunter* has been limited by subsequent cases, and the nonjusticiable "political question" insulation has been significantly penetrated. *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110; *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. However, the principle announced regarding judicial review in *Hunter* appears to be viable in cases such as the one under consideration.

In *Hammonds v. City of Corpus Christi, Texas,* 343 F.2d 162 (5th Cir. 1965), cert. denied, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), the court followed *Hunter* and affirmed the dismissal of a suit by property owners who were contending that the annexation of their property was arbitrary and denied them equal protection of the law.

In *Detroit Edison Company v. East China Township School District No. 3,* 378 F.2d 225 (6th Cir. 1967), cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967), the court distinguished the voting rights cases as follows:

"Two other Circuits, the Fifth and Tenth, have had occasion to pass on cases where the constitutionality of a state annexation procedure was raised. As the District Court noted, both Courts of Appeals relied on *Hunter v. City of Pittsburgh* in affirming dismissals of their respective cases. In *Hammonds v. City of Corpus Christi,* 343 F.2d 162 (5th Cir.), cert. denied, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), the court found no error in the District Court's decision which dismissed

the complaint on the ground, among others, that 'the annexation of lands to a city has been held .without exception to be purely a political matter, entirely within the power of the State Legislature to regulate'. And in *International Harvester Co. v. Kansas City,* 308 F.2d 35 (10th Cir. 1962), cert. denied, 371 U.S. 948, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963) after quoting from *Hunter,* stated:

'Neither the due process clause nor the concept of equal protection is available to persons seeking to obstruct the ordinary and necessary exercise of a state's political functions. * * *'

With respect to the annexation issue, plaintiffs' reliance on the relatively recent apportionment cases is misplaced. The Court in *Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1954), for example, recognized that 'all qualified voters have a constitutionally protected right to vote' (referring of course to the right to vote for a 'candidate of one's choice' in a 'representative government' system), and thus the Court, relying on the equal protection concept, limited the states' power to disregard population in defining political boundaries for election purposes. However, as the District Court noted, the reapportionment cases 'create no constitutional rights in affected citizens concerning the *procedure* for creating or altering' any type of state district. The judgment of the District Court with respect to the annexation issue will hereinafter be affirmed; reference is made to the well reasoned opinion of District Judge Theodore Levin reported at 247 F.Supp. 296, wherein the cases of *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) and *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) are shown to be inapposite."

The Texas Supreme Court in *State of Texas ex rel. Pan American Production Co. v. Texas City,* 157 Tex. 450, 303 S.W.2d 780 (1957), appeal dismissed per curiam, 355 U.S. 603, 78 S.Ct. 533, 2 L.Ed.2d 523, held that the determination of property to be included in an annexation ordinance was a

legislative matter, and not subject to judicial review. There the ordinance included submerged lands on which Pan American Production Company owned oil and gas leasehold estates. The court said:

" . . . But at any rate the conclusion of the petitioners here that the annexation ordinance was unreasonable and arbitrary is only to say that it was unreasonable and arbitrary because the land was not suitable, and had no relation to the City's needs, and it was for the purpose only of acquiring additional revenue and could afford no benefit to the owners of the property annexed. The decisions of this State have repeatedly held that such facts do not warrant intervention or review by the courts . . . "

In distinguishing *Myles Salt Co. v. Board of Commissioners,* 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392, the court observed:

"A valid distinction is to be made, however, between a special tax or assessment to finance special improvements designed to benefit property or persons located within the particular taxing district, and on the other hand an ad valorem tax on all property within the taxing jurisdiction of the general welfare of the entire community. Benefits may be intangible and incapable of exact ascertainment, but it is constitutionally sufficient if taxes are uniform and are for public purposes in which the City has an interest. *Morton Salt Co. v. City of Hutchinson,* 10 Cir., 177 F.2d 889 . . . "

See also: *People v. City of Palm Springs,* 51 Cal.2d 38, 331 P.2d 4 (1958); *Winship v. City of Corpus Christi,* 373 S.W.2d 844 (Tex. Civ.App.—Corpus Christi 1963, writ ref. n. r. e.), appeal dismissed per curiam, 379 U.S. 646, 85 S.Ct. 611, 13 L.Ed.2d 551.

The court in *Norris v. City of Waco,* 57 Tex. 635 (1882) stated:

"To hold that each person must receive the same benefit as another may from the expenditure of money raised by taxation would be to hold that the law required an impossibility, for, in the very nature of things, some persons will derive greater pecuniary benefit from the expenditure of money for strictly public purposes than will others. In fact, some may receive no benefit whatever, save such as results to them from the preservation of order, protection to property, and the general prosperity which results therefrom, while others may and will be directly benefited by the increased value of their property and increase to their business which results from the expenditure of money raised by taxation, for purposes in every respect strictly public."

Plaintiffs' contention that the Act is unreasonable and arbitrary because they were included within the boundaries of the district for the purpose only of acquiring additional revenue and that they would receive no benefit from the district, does not present a justiciable matter under the Equal Protection Clause of the Fourteenth Amendment.

We also hold that the "one man-one vote" election scheme required by the Act does not violate the Equal Protection Clause. *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Stewart v. Parish School Board of Parish of St. Charles,* 310 F.Supp. 1172 (E.D.La.1970), aff'd mem., 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129 (1970).

We have considered all of plaintiffs' points and they are all overruled. The judgment of the trial court is affirmed.