

**IN THE COURT OF CRIMINAL APPEALS**
**OF TEXAS**

NO. PD-0912-08

**THE STATE OF TEXAS**

**v.**

**MICHAEL JOSEPH RHINE, Appellee**

**ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE SECOND COURT OF APPEALS**
**DENTON COUNTY**

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion in which MEYERS, HERVEY, and HOLCOMB, JJ., joined. KEASLER, J., concurred.

**O P I N I O N**

Appellee was charged with improper outdoor burning. The information alleged that he

did then and there unlawfully, intentionally or knowingly cause, allow, or permit outdoor burning, to wit: [appellee] burned domestic and non-domestic waste including crossties, fiberglass, tires and pvc pipe when collection of domestic waste is provided or authorized by the local governmental entity having jurisdiction, within the State of Texas in violation of an order, permit, or exemption issued or a rule adopted under Chapter 382, Health and Safety Code, to wit: Title 30, Texas Administrative Code Rule Section 111.201, and the outdoor burning was not authorized by the Executive Director of the Texas Commission o[n] Environmental Quality, nor was the outdoor burning authorized by an exception contained in Title 30, Texas Administrative Code Rule Sections 111.205, 111.207, 111.209, 111.211, 111.213[.]

Appellee filed a motion to quash the information, alleging that the provision of the Administrative Code under which he was charged was void because the legislature unconstitutionally delegated authority to the Texas Commission on Environmental Quality (TCEQ), an executive-branch agency, in violation of the doctrine of separation of powers. The trial court granted the motion. The state appealed, and the court of appeals reversed. *State v. Rhine*, 255 S.W.3d 745, 753 (Tex. App.–Fort Worth 2008). Appellee filed a petition for discretionary review.

Because TEX. HEALTH & SAFETY CODE § 382.018(a), which delegates to TCEQ the power to prohibit or control the outdoor burning of waste, is a constitutional delegation of legislative authority, we affirm the judgment of the court of appeals.

### Facts

Few of the facts of the case are known to us because the appeal comes to us on a motion to quash. What we do know is that appellee admitted to a Denton County Fire Marshall that he had started a fire on July 8, 2005, in Northlake, Texas. The material burned in the fire included crossties, fiberglass, tires, and PVC pipe. On December 12, 2006, the state filed an information that alleged that appellee had violated the Texas Clean Air Act.

On May 14, 2007, appellee moved to quash the information, contending that the enabling statute,[1] the administrative rules adopted by TCEQ pursuant to that legislative authority,[2] and the penal statute upon which the state's information rested,[3] comprised an unconstitutional delegation of legislative authority prohibited by Article II, § 1, of the Texas Constitution. He argued that the

---

[1] TEX. HEALTH & SAFETY CODE § 382.018.

[2] 30 TEX. ADMIN. CODE §§ 111.201-221 (1996) (Tex. Comm'n on Envtl. Quality, Outdoor Burning).

[3] TEX. WATER CODE § 7.177(a)(5).

delegation was unconstitutional because the legislature did not define what materials and conditions were prohibited in outdoor burning, leaving those decisions to TCEQ. The trial court agreed and quashed the information. In his petition to this Court, appellee argues, as he did in the court of appeals, that the trial court was correct.

## Separation of Powers

The issue of unconstitutional delegation that appellee raises implicates Article II, § 1, of the Texas Constitution. That article provides that

> [t]he powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. Appellee argues that this section mandates a strict separation between the branches of government, making the delegation of authority from the legislature to TCEQ, an executive-branch agency, unconstitutional. However, his claim of strict interpretation ignores the precedent of not only this Court, but also that of the Texas Supreme Court. *See, e.g., Ex parte Ferguson*, 15 S.W.2d 650 (Tex. Crim. App. 1929); *Land v. State*, 581 S.W.2d 672 (Tex. Crim. App. 1979); *Ex parte Leslie*, 223 S.W. 227 (Tex. Crim. App. 1920). *See also Tex. Boll Weevil Eradication Found., Inc. v. Lewellyn*, 952 S.W.2d 454 (Tex. 1997). As this Court stated in *Land v. State*, "[t]here are many powers which the Legislature may delegate to other bodies . . . where the Legislature cannot itself practically or efficiently perform the functions required." *Land*, 581 S.W.2d at 673 (quoting *Texas National Guard Armory Board v. McCraw*, 126 S.W.2d 627, 635 (Tex. 1939).)

In *Armadillo Bail Bonds v. State*, 802 S.W.2d 237 (Tex. Crim. App. 1990), this Court provided a test for determining when the separation of powers is violated.

> We have held repeatedly that the separation of powers provision may be violated in either of two ways. First, it is violated when one branch of government assumes, or is delegated, *to whatever degree*, a power that is more 'properly attached' to another branch. The provision is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers.

*Id.* at 239 (emphasis in original; internal citations omitted). Thus, if TCEQ has been delegated a power that is more properly attached to the legislature, then appellee is correct, and the statute that he was charged with violating is unconstitutional.

**Powers Properly Attached to the Legislature**

The Texas Constitution vests law-making power in the legislature. TEX. CONST. art. III, § 1. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *Copeland v. State*, 244 S.W. 818, 819 (Tex. Crim. App.1922). *See also Russell v. Farquhar*, 55 Tex. 355, 359 (1881). Only the legislature can exercise that power, subject to restrictions imposed by the constitution. TEX. CONST. art. II, § 1. These restrictions must be express or clearly implied. *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991) (citing *Gov't Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 563 (Tex. 1963)).

The legislature also declares the public policy of the state and may depart from established public policy, reshape it, or reform it. *State v. Dallas*, 319 S.W.2d 767, 774 (Tex. Civ. App.–Austin 1958) (citing *McCain v. Yost*, 284 S.W.2d 898, 900 (Tex. 1955)); *Reed v. Waco*, 223 S.W.2d 247, 253 (Tex. Civ. App.–Waco 1949). It may do this as long as constitutional guarantees are not abridged. *Reed*, 223 S.W.2d at 253. The legislature may enact laws that enhance the general welfare

of the state and resolve political questions, such as the boundaries of political subdivisions, subject to constitutional limits. *Carter v. Hamlin Hosp. Dist.*, 538 S.W.2d 671, 673 (Tex. Civ. App.–Eastland 1976); *see Hunter v. City of Pittsburgh*, 207 U.S. 161, 178-79 (1907). It also has exclusive dominion over the fixing of penalties for offenses under the state's penal laws. *See Sasser v. State*, 98 S.W.2d 211, 212 (Tex. Crim. App. 1936); *David v. State*, 453 S.W.2d 172, 179 (Tex. Crim. App. 1970), *vacated on other grounds in David v. Texas*, 408 U.S. 937 (1972); *Grant v. State*, 505 S.W.2d 279, 282 (Tex. Crim. App. 1974).

The legislature may delegate some of its powers to another branch, but only if those powers are not more properly attached to the legislature. For example, legislative power cannot be delegated to the executive branch, either directly or to an executive agency. The issue becomes a question of the point at which delegation becomes unconstitutional. The Texas Supreme Court has described the problem: "the debate over unconstitutional delegation becomes a debate not over a point of principle but over a question of degree." *Tex. Boll Weevil Eradication Found., Inc.*, 952 S.W.2d at 466. This Court, in *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978), stated that sufficient standards are necessary to keep the degree of delegated discretion below the level of legislating.

> Generally, a legislative body, after declaring a policy and fixing a primary standard, may delegate to the administrative tribunal or officer power to prescribe details, *Margolin v. State*, 151 Tex.Cr.R. 132, 205 S.W.2d 775 (1947); *Williams v. State*, 146 Tex.Cr.R. 430, 176 S.W.2d 177 (1943), such as to establish rules, regulations or minimum standards reasonably necessary to carry out the expressed purpose of the act. *Beall Medical Surgical Clinic and Hospital, Inc. v. State Board of Health*, 364 S.W.2d 755 (Tex.Civ.App. Dallas, 1963), and cases there cited.

> Thus, the existence of an area for exercise of discretion by an administrative officer under delegation of authority does not render delegation unlawful where standards formulated for guidance and limited discretion, though general, are capable of

reasonable application. *Nichols v. Dallas*, *supra*, and cases there cited. So long as the statute is sufficiently complete to accomplish the regulation of the particular matters falling within the Legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with the administration of the statute. *Commissioners Court of Lubbock v. Martin*, *supra*.

*Ex parte Granviel* at 514 (citing *Comm'rs Ct. of Lubbock County v. Martin*, 471 S.W.2d 100 (Tex. Civ. App.–Amarillo 1971, writ ref'd, n.r.e); and *Nichols v. Dallas*, 347 S.W.2d 326 (Tex. Civ. App.–Dallas 1961)). Therefore, if the legislature has provided sufficient standards to guide the agency's discretion and the delegated power is not legislative, that agency has not been granted a power that is more properly attached to the legislature and the delegation is not an unconstitutional violation of separation of powers.

## The Statutory Framework

The statutory scheme is not straightforward; the statutes are found in at least two codes, and the restrictions on burning are scattered through the Administrative Code. Appellee was charged with violating TEXAS WATER CODE § 7.177(a)(5), which governs violations of the Clean Air Act, which is found in the Health and Safety Code.

> (a) A person commits an offense if the person intentionally or knowingly, with respect to the person's conduct, violates:
> . . .
> > (5) an order, permit, or exception issued or a rule adopted under Chapter 382, Health and Safety Code.
> (b) An offense under this section is punishable for an individual under Section 7.187(1)(B) or Section 7.187(2)(C) or both.[4]

---

[4] (1) a fine, as imposed under the section creating the offense, of:
. . .
(B) not less than $ 1,000 or more than $ 50,000;
. . . .
(2) confinement for a period, as imposed by the section creating the offense, not to exceed:
. . .
(C) 180 days . . . .

The enabling provision of Chapter 382 of the Health and Safety Code for the specific rule that applicant was alleged to have violated is § 382.018(a).

> (a) Subject to Section 352.082, Local Government Code, and except as provided by Subsections (b) and (d), the commission by rule may control and prohibit the outdoor burning of waste and combustible material and may include requirements concerning the particular method to be used to control or abate the emission of air contaminants from that burning.

"Air contaminants" are defined as "particulate matter, radioactive material, dust, fumes, gas, mist, smoke, vapor, or odor, including any combination of those items, produced by processes other than natural." TEX. HEALTH & SAFETY CODE § 382.003(2). "Air pollution" is defined as

> the presence in the atmosphere of one or more air contaminants or combination of air contaminants in such concentration and of such duration that:
> (A) are or may tend to be injurious to or to adversely affect human health or welfare, animal life, vegetation, or property; or
> (B) interfere with the normal use or enjoyment of animal life, vegetation, or property.

TEX. HEALTH & SAFETY CODE § 382.003(3).

To deal with these concerns, the legislature gave TCEQ several duties and powers:

> (a) The [TCEQ] shall:
> (1) administer [the Clean Air Act];
> (2) establish the level of quality to be maintained in the state's air; and
> (3) control the quality of the state's air.
> (b) The commission shall seek to accomplish the purposes of [the Clean Air Act] through the control of air contaminants by all practical and economically feasible methods.
> (c) The commission has the powers necessary or convenient to carry out its responsibilities.

TEX. HEALTH & SAFETY CODE § 382.011.

The legislature stated that the purpose of the Clean Air Act is

---

TEX. WATER CODE § 7.187(1)(B), (2)(C).

to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility.

TEX. HEALTH & SAFETY CODE § 382.002(a).

## TCEQ Regulations

Pursuant to the Clean Air Act, TCEQ adopted a number of rules. Of relevance in this case are §§ 111.201-111.221 of 30 TEX. ADMIN. CODE (1996) (Tex. Comm'n on Envtl. Quality, Outdoor Burning). Section 111.201 states the general prohibition.

No person may cause, suffer, allow, or permit any outdoor burning within the State of Texas, except as provided by this subchapter or by orders or permits of the commission. Outdoor disposal or deposition of any material capable of igniting spontaneously, with the exception of the storage of solid fossil fuels, shall not be allowed without written permission of the executive director. . . .

However, a number of exceptions to the general prohibition are set out in other sections, e.g., 30 TEX. ADMIN. CODE § 111.205 (1996) (Tex. Comm'n on Envtl. Quality, Exception for Fire Training); § 111.207 (Exception for Fires Used for Recreation, Ceremony, Cooking, and Warmth); § 111.209 (Exception for Disposal Fires); § 111.211 (Exception for Prescribed Burn); § 111.213 (Exception for Hydrocarbon Burning). Outdoor burning is also allowed with approval of the executive director. 30 TEX. ADMIN. CODE § 111.215 (1996) (Tex. Comm'n on Envtl. Quality, Executive Director Approval of Otherwise Prohibited Outdoor Burning).

30 TEX. ADMIN. CODE § 111.209(1) (1996) (Tex. Comm'n on Envtl. Quality, Exception for Disposal Fires) states an exception for burning of domestic waste when local government does not provide disposal. This exception, on the scant evidence in the record, appears to be the only one that may be applicable. That provision authorizes

domestic waste burning at a property designed for and used exclusively as a private residence, housing not more than three families, when collection of domestic waste is not provided or authorized by the local governmental entity having jurisdiction, and when the waste is generated only from that property. Provision of waste collection refers to collection at the premises where the waste is generated. The term "domestic waste" is defined in § 101.1 of this title (relating to Definitions). Wastes normally resulting from the function of life within a residence that can be burned include such things as kitchen garbage, untreated lumber, cardboard boxes, packaging (including plastics and rubber), clothing, grass, leaves, and branch trimmings. Examples of wastes not considered domestic waste that cannot be burned, include such things as tires, non-wood construction debris, furniture, carpet, electrical wire, and appliances;

*Id*. The information that was filed in this case alleged that appellee lacked approval from the executive director and that the burning did not fall into one of the exceptions to the general prohibition against outdoor burning. More specifically, the information alleged that appellee had burned both domestic waste, when collection of domestic waste was provided by the local governmental entity having jurisdiction, and non-domestic waste. Even if appellee's outdoor burning were in fact approved or fell within an exception, there are still other restrictions. Sections 111.219(1-6) set out requirements for notification of burning, permissible sites for burning, and permissible conditions for burning. Section 111.219(7) provides that certain materials may not be burned, despite being otherwise allowable. 30 TEX. ADMIN. CODE § 111.219(7) (1996) (Tex. Comm'n on Envtl. Quality, General Requirements for Allowable Outdoor Burning). These materials are: "[e]lectrical insulation, treated lumber, plastics, non-wood construction/demolition materials, heavy oils, asphaltic materials, potentially explosive materials, chemical wastes, and items containing natural or synthetic rubber. . . ."[5] *Id*. Appellee allegedly violated these rules by burning

---

[5] There is a conflict between this section's overarching prohibition on plastics and § 111.209(1)'s allowance of packaging plastics in domestic waste. This may be a *de minimis* exception, as most domestic plastic packaging are small items. Whatever the inconsistency as to plastic packaging, appellee also burned explicitly prohibited materials, including rubber (tires), treated lumber (crossties), and non-wood construction/demolition

tires, PVC pipe, fiberglass, and crossties.

## Statutory Construction: Nature of Statute

The nature of a statute determines its construction. Although the common-law rule that a penal statute is to be strictly enforced does not apply to the Penal Code,[6] "criminal statutes outside the penal code must be construed strictly, with any doubt resolved in favor of the accused." *State v. Johnson*, 219 S.W.3d 386, 388 (Tex. Crim. App. 2007). The statutes involved here are found in the Water Code and the Health & Safety Code, not the Penal Code; thus we consider whether the statute at issue here is a penal statute.

> Under the "intent-effects test," a reviewing court first must ask whether the legislature intended the statute to be a criminal punishment. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."
>
> * * *
>
> [If] the legislature manifests an expressly punitive intent, the inquiry is at an end. . . . If the legislature intends to establish a civil remedy, a reviewing court then examines "whether the statutory scheme [is] so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty."

*Rodriguez v. State*, 93 S.W.3d 60, 67 (Tex. Crim. App. 2002) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)) (citations omitted).

Section 12.41 of the Penal Code, Classification of Offenses Outside This Code, states that

> [f]or purposes of this subchapter, any conviction not obtained from a prosecution under this code shall be classified as follows:
> (1) "felony of the third degree" if imprisonment in a penitentiary is affixed to the offense as a possible punishment;

---

debris (PVC pipe and fiberglass).

[6] TEX. PENAL CODE § 1.05(a).

(2) "Class B misdemeanor" if the offense is not a felony and confinement in a jail is affixed to the offense as a possible punishment;

(3) "Class C misdemeanor"if the offense is punishable by fine only.

We conclude that, because an offense alleged under TEX. WATER CODE § 7.177(a)(5) is punishable by up to 180 days in jail pursuant to TEX. WATER CODE § 7.187(2)(C), § 7.177(a)(5), it is a Class B misdemeanor. It is therefore a penal statute and "must be construed strictly, with any doubt resolved in favor of the accused."

## Construction of Penal Statutes

Under *Boykin*, statutes are read according to the plain meaning of their literal text as long as it is clear and unambiguous. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). However, if the plain language leads to an absurd result or is ambiguous, "then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extra-textual factors as executive or administrative interpretations of the statute or legislative history." *Id*. Section 311.011 of the Code Construction Act[7] states that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage" and that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." These provisions apply to statutes and rules "adopted under a code." Section 311.002.

## The Validity of the Delegation of Powers

This Court stated in *Granviel* that, when validly delegating authority, the legislature must declare a policy and fix a primary standard. *Ex parte Granviel*, 561 S.W.2d at 514. Here, the legislature has declared a policy: "(a) The policy of this state and the purpose of this chapter are to

---

[7] TEX. GOV'T CODE, Ch. 311.

safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility." TEX. HEALTH & SAFETY CODE § 382.002(a). Because there is a stated policy, the issue becomes whether the legislature has provided a fixed primary standard that is sufficiently complete, is capable of reasonable application, provides guidance, and limits discretion.

TCEQ's grant of authority from the legislature as to outdoor burning is limited to its responsibility to maintain the state's air quality by controlling air contaminants. The general grant of powers and duties given to TCEQ by the legislature are that

> (a) The [TCEQ] shall:
>     (1) administer [the Clean Air Act];
>     (2) establish the level of quality to be maintained in the state's air; and
>     (3) control the quality of the state's air.
> (b) The commission shall seek to accomplish the purposes of [the Clean Air Act] through the control of air contaminants by all practical and economically feasible methods.
> (c) The commission has the powers necessary or convenient to carry out its responsibilities.

TEX. HEALTH & SAFETY CODE § 382.011.

TCEQ may, at its discretion, adopt rules that may differentiate among particular conditions, particular sources, and particular areas of the state, but it shall recognize that atmospheric conditions may create a need for air control in one area of the state, but not in other areas, and that residential, industrial, and rural areas may necessitate rules appropriate to each kind of area. TEX. HEALTH & SAFETY CODE § 382.017(d-e). Further, with some exceptions, TCEQ may not, by rule, "specify: (1) a particular method to be used to control or abate air pollution; (2) the type, design or method of

installation of equipment to be used to control or abate air pollution; or (3) the type, design, method of installation, or type of construction of a manufacturing process or other kind of equipment." TEX. HEALTH & SAFETY CODE § 382.017(f).

TEX. HEALTH & SAFETY CODE § 382.018(a) states that TCEQ "may control and prohibit the outdoor burning of waste and combustible material and may include requirements concerning the particular method to be used to control or abate the emission of air contaminants resulting from that burning." "Air contaminants" is defined by the legislature as "particulate matter, radioactive material, dust, fumes, gas, mist, smoke, vapor, or odor, including any combination of those items, produced by processes other than natural." TEX. HEALTH & SAFETY CODE § 382.003(2). The legislature did not define "waste" or "combustible material" in the Clean Air Act. "Combustible material" is unambiguous in its plain meaning; a combustible material is a material that burns. "Waste,"on the other hand, may have many meanings.[8] The statute leaves to TCEQ's discretion the definition of the term as it is used in § 381.0189(a), but this discretion is not unfettered. Within that statute, the legislature provided additional guidance to TCEQ that narrowed the extent of its discretion. Subsection 382.018(b) requires TCEQ to allow outdoor burning of plant growth in certain areas. Subsection § 382.018(c) prohibits TCEQ from requiring burning done pursuant to §

---

[8] Webster's defines waste as: –*n*. 1. The act of wasting or the state of being wasted. 2. An uninhabited or uncultivated place or region. 3. A devastated or destroyed region, town, or building : RUIN. 4. a. A worthless or useless by-product. b. Something, as steam, that escapes without being used. 5. Garbage : trash. 6. The undigested residue of food eliminated from the body. WEBSTER'S II NEW COLLEGE DICTIONARY (1999).

Black's Law Dictionary defines waste as: waste, n. 1. Permanent harm to real property committed by a tenant (for life or for years) to the prejudice of the heir, the reversioner, or the remainderman. • In the law of mortgages, any of the following acts by the mortgagor may constitute waste: (1) physical damage, whether intentional or negligent, (2) failure to maintain and repair, except for repair of casualty damage or damage caused by third-party acts, (3) failure to pay property taxes or governmental assessments secured by a lien having priority over the mortgage, so that the payments become delinquent, (4) the material failure to comply with mortgage covenants concerning physical care, maintenance, construction, demolition, or casualty insurance, or (5) keeping the rents to which the mortgagee has the right of possession. –Also termed devastation; vastum. Black's Law Dictionary (8th ed. 2004).

382.018(b) to have TCEQ's approval or requiring that there be no alternative to burning. Subsection (d) prohibits TCEQ from restricting burning of plant growth at designated burn sites, subject to specific requirements as to location and supervision by the fire department. Subsection (e) requires TCEQ to advise the fire-department employee who is supervising burning pursuant to § 382.018(d) about alternatives to burning. In combination, these subsections exclude plant growth from the definition of "waste."

In the outdoor-burning enabling statute, the legislature gave to TCEQ the power to "control and prohibit the outdoor burning of waste and combustible material" and to "include requirements concerning the particular method to be used to control or abate the emission of air contaminants from that burning." TEX. HEALTH & SAFETY CODE § 382.018(a). Because TCEQ's grant of authority includes control of air contaminants and permission to use "all practical and economically feasible methods" to accomplish that goal, including prohibition and control of the outdoor burning of waste, we conclude that materials, other than plant growth, that produce air contaminants when burned are what is meant by "waste."

The Code Construction Act instructs us that we are to read words of statutes and rules in context and construe them according to the rules of grammar and common usage unless a word has acquired a technical meaning. By the plain language of the rule, "waste," read in the context of 30 TEX. ADMIN. CODE § 111.209(1) and construed according to the rules of grammar and common usage, means "domestic waste," which is defined in 30 TEX. ADMIN. CODE § 101.1(26) as "[t]he garbage and rubbish normally resulting from the functions of life within a residence." Section 111.209(1) states that "[w]astes normally resulting from the functions of life within a residence include kitchen garbage, untreated lumber, cardboard boxes, packaging (including plastics and

rubber), clothing, grass, leaves, and branch trimmings. Examples of wastes not considered domestic waste [and] that cannot be burned, include such things as tires, non-wood construction debris, furniture, carpet, electrical wire, and appliances." "Waste" is thus, by the language of the rule, divided into "domestic waste" that may be burned in some circumstances and "wastes not considered domestic waste" that may not be burned, presumably because the non-domestic wastes produce an unacceptable level of air contaminants.

We conclude that the standard expressed by the legislature sufficiently limited the authority of TCEQ such that the legislature defined the elements of the offense and left to TCEQ only 1) the determination of what materials that, when burned, created the air contaminants that were the concern of the legislature, and 2) control over the places and conditions under which those materials may be burned. Further, TCEQ is barred from mandating the methods or equipment to be used in outdoor burning. In accordance with the strictures placed on it by the legislature, TCEQ adopted rules that delineate only what materials may be burned and the conditions under which those materials may be burned. The rules set out reasonable means through which TCEQ obeys the legislative mandate to control the level of air contaminants produced by outdoor burning and do not stray beyond the authority granted by the legislature.

## Conclusion

The legislature declared both a policy as to restricting the production of air contaminants that result from outdoor burning and a sufficient fixed primary standard as to what "wastes" TCEQ may restrict: those materials that produce air contaminants when burned. As we said in *Ex parte Granviel*,

the existence of an area for exercise of discretion by an administrative officer under

delegation of authority does not render delegation unlawful where standards formulated for guidance and limited discretion, though general, are capable of reasonable application. . . . So long as the statute is sufficiently complete to accomplish the regulation of the particular matters falling within the Legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with the administration of the statute.

*Id*. at 514.

Because the legislature declared a policy and set standards and limitations on the authority delegated to TCEQ that are capable of reasonable application, provide guidance, and limit discretion, it has not unconstitutionally delegated to TCEQ authority more "properly attached to" the legislature and, therefore, there is no violation of the separation of powers principle of Art. II, § 1, of the Texas Constitution.

We affirm the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

Delivered: September 23, 2009
Publish