

## NUMBER 13-13-00088-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CITY OF CORPUS CHRISTI,
TEXAS,                                                                        Appellant,

v.

CITY OF INGLESIDE, TEXAS,                                        Appellee.

### On appeal from the 156th District Court
### Of San Patricio County, Texas.

### MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Chief Justice Valdez**

By one issue, appellant, the City of Corpus Christi, Texas, appeals the trial court's

denial of its plea to the jurisdiction. Specifically, Corpus Christi contends that appellee,

the City of Ingleside, Texas, has requested relief it is not entitled to receive. We reverse

and render.

## I. BACKGROUND

Corpus Christi, Texas enacted ordinance 6636 on September 19, 1962, which according to Corpus Christi "annexed territory and established the city limit boundary line. . . ." Ingleside filed a petition for a declaratory judgment asking the trial court to construe ordinance 6636's use of the term "shoreline." Ingleside further sought construction of an Ingleside ordinance, which also described the boundary with Corpus Christi as the "shoreline." Ingleside claimed that the ordinance's use of the term "shoreline" when describing the boundary between the two cities had allowed for double taxation. Ingleside requested that the trial court "construe the jurisdictional boundaries such that structures, both natural and man-made, that are attached to and part of the fast land, and are functionally part of the land, are entirely within the jurisdiction of the land side of the shoreline." Ingleside stated that the trial court's determination of what the "shoreline" encompassed would "settle the question of which city bears both the benefit and corresponding burden of having such an area within its city limits. [And, at] this time, Corpus Christi has claimed the benefit, but Ingleside has borne the burden."

Corpus Christi filed a plea to the jurisdiction claiming that the trial court lacked subject matter jurisdiction over Ingleside's cause of action for several reasons. First, Corpus Christi argued that Ingleside was requesting "a declaratory judgment that will revise the boundary line set by [Ordinance 6636] so that certain man-made structures which were constructed after the adoption of [Ordinance 6636] and which project into [Corpus Christi's] jurisdiction moved into [Ingleside's] jurisdiction." Corpus Christi stated that as a home rule city, only it had the authority to fix its boundaries, and the trial court lacked any authority to revise those boundaries. Corpus Christi further claimed that

Ingleside's cause of action was barred by sovereign immunity. Finally, Corpus Christi argued that the trial court lacked subject matter jurisdiction because the issue presented involved "political questions which have been decided by legislation and are not subject to judicial revision," and as such, no justiciable controversy exists.

The trial court held a hearing on Corpus Christi's plea to the jurisdiction. The trial court denied the plea. This appeal followed.

## II.     STANDARD OF REVIEW

The purpose of a plea to the jurisdiction is to "defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A challenge to the trial court's subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We will, when necessary, consider relevant evidence submitted by the parties to resolve the jurisdictional dispute. *Id.* at 227 (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). However, we will consider only the evidence relevant to the jurisdictional question. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issues, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228.

## III.     DISCUSSION

Because it is dispositive of this appeal, we will first address Corpus Christi's argument that the Uniform Declaratory Judgment Act ("UDJA") "does not extend the jurisdiction of the courts over matters which are purely political in nature."[1] According to

---

[1] UDJA states in pertinent part that a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance . . . may have determined any question of construction or validity arising under the instrument, statute, [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a) (West, Westlaw through 2013 3d

Corpus Christi, in this case, Ingleside is attempting "to use the UDJA to confer jurisdiction on the trial court over the strictly political question of where the boundary of Corpus Christi is located." In other words, Corpus Christi claims that Ingleside's cause of action is in essence the setting of the boundary of a political subdivision, which is purely a political question. *See Carter v. Hamlin Hosp. Dist.*, 538 S.W.2d 671, 673 (Tex. App.—Eastland 1976, writ ref'd n.r.e.) *cert. denied*, 430 U.S. 984 (1977) (explaining that purely political questions are not justiciable therefore, the trial court lacks jurisdiction to address them). We agree with Corpus Christi that if Ingleside is seeking the determination of a political subdivision's boundary, its suit, whether for declaratory relief or not, is barred as a political question that the legislature must decide. *See State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 274 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd) ("The determination of the boundaries of a political subdivision of the state is a 'political question' solely within the power, prerogative and discretion of the legislature and not subject to judicial review."). Ingleside responds that it is neither seeking to annex or take Corpus Christi's territory nor to set aside or revise the boundary.

However, in its brief, Ingleside stated, "The facts pled [by Ingleside] describe the nature of the lawsuit and that its resolution will settle disputes about the geographical areas which lie within the boundaries of the respective cities." In its petition, Ingleside stated, "Ingleside requests [that the trial court] construe the jurisdictional boundaries such that structures, both natural and man-made, that are attached to and part of the fast land, and are functionally part of the land, are entirely within the jurisdiction of the land-side of

---

C.S.). "The [U]DJA does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

4

the shoreline" and that "[a] declaration of the boundary of each city to include or exclude the disputed area, or any part thereof, will settle the question of which city bears both the benefit and corresponding burden of having such area within its city limits." Finally, in its prayer, Ingleside requested that the court "construe the jurisdictional boundaries."

We agree with Ingleside that it has not exprssly requested to annex, set, or revise the boundary. However, it appears to us from reading Ingleside's petition, that Ingleside wants the trial court to do just that—to make a declaration stating the location of Corpus Christi's boundary. However, ordinance 6636 provides that the shoreline is the boundary. Since 1962 when ordinance 6636 was passed, both cities have been able to determine the location of Corpus Christi's boundary. In its brief, Ingleside states that the location of the boundary is not described by "metes and bounds or other fixed descriptive language," and the shoreline "is not a fixed location and is subject to change by natural and artificial means." In short, it appears that Ingleside acknowledges that once the trial court "construes" the term "shoreline," the parties will then be able to locate the boundary.[2]

Moreover, once the trial court rules in this case, its declaratory judgment will, in effect, potentially draw a new boundary line, which was already established by ordinance 6636 and Ingleside's own ordinance. By ordinance, each city's council decided that the respective city's boundary is the shoreline, which Ingleside agrees is within a city council's authority to determine. There is no evidence that when the cities' councils used the term shoreline, the parties were not aware of the shoreline's location or of the meaning of the

---

[2] Ingleside appears to disagree with the area that Corpus Christi has designated as the shoreline's location. We also note that, both Ingleside's city council and Corpus Christi's city council previously determined by ordinance that each city's boundary is the shoreline and did not appear to have any problem determining the meaning of the term shoreline.

5

term shoreline. Furthermore, there is no evidence that the cities were confused in the past about where the shoreline is located.

In its petition, Ingleside stated, "Corpus Christi has asserted jurisdiction over structures which are built upon and affixed to land within Ingleside, a portion of which extends from dry land into or over the water of Corpus Christi Bay, thereby subjecting property owners to double taxation for all or part of integral structures which are appurtenant to and part of land in Ingleside." We acknowledge that without a declaration that the boundary is different than what is currently recognized as Corpus Christi's boundary, these structures will remain in Corpus Christi's jurisdiction. However, by seeking a declaration of the meaning of the term shoreline, Ingleside is in effect asking the trial court to determine the boundaries of two political subdivisions.[3] *See Carter*, 538 S.W.2d at 675 ("The principle that the determination of territorial boundaries is ordinarily a political function, not subject to judicial review, was announced by the United States Supreme Court in the early case of *Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907)."); *see also Jimenez v. Hidalgo County Water Improvement Dist. No. 2*, 68 F.R.D. 668, 671 (S.D. Tex. 1975), *aff'd*, 424 U.S. 950 (1976) ("The alteration of the boundaries of political subdivisions by the state is a political function entirely within the power of the state legislature to regulate."). Thus, Ingleside seeks an answer to a purely political question solely within the power, prerogative, and discretion of the legislature and not subject to judicial review.[4] *See State ex rel. Grimes County Taxpayers Ass'n v*. 565 S.W.2d at 274.

---

[3] The trial court may determine that the boundary is located in the same place as the parties recognize it is currently, or the trial court may determine that the boundary is elsewhere. Either way, the trial court is being asked to determine a political subdivision's boundary.

[4] All of the authority we have found states that the determination of a political subdivision's boundary is a political question. We have found no contrary authority, and Ingleside has cited none.

Moreover, Ingleside presented no evidence that the term shoreline is not specific enough for either city to locate Corpus Christi's boundary. And Corpus Christi has apparently not had any problem locating its own boundary. Accordingly, we conclude that the trial court lacks jurisdiction to determine the boundary of these political subdivisions. *See Carter v.* 538 S.W.2d at 673. We sustain Corpus Christi's first issue.[5]

## IV. CONCLUSION

We reverse the trial court's judgment denying Corpus Christi's plea to the jurisdiction and render judgment dismissing Ingleside's claims against Corpus Christi for lack of subject matter jurisdiction.

*/s/ Rogelio Valdez*
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of May, 2014.

---

[5] We need not address Corpus Christi's other arguments regarding why the trial court lacked jurisdiction as they are not dispositive. *See* TEX. R. APP. P. 47.1.